IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALMA DELIA VALENZUELA,<br><br>Petitioner,<br><br>v.<br><br>JASON KNIGHT, Field Office Director, Salt Lake City Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE/ERO); PAUL WIMMER, Tooele County Sheriff; DAVID VENTURELLA, Acting Director of ICE; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, U.S. Attorney General,<br><br>Respondents. | MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS<br><br>Case No. 2:26-cv-00886-JNP-CMR<br><br>Chief District Judge Jill N. Parrish<br><br>Chief Magistrate Judge Cecilia M. Romero |

Before this court is Petitioner Alma Delia Valenzuela's petition for a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. No. 1. For the following reasons, the court GRANTS the petition. The court also GRANTS Respondent's motion for leave to file additional exhibits (Dkt. No. 26).

## BACKGROUND[1]

Ms. Valenzuela is a citizen of Mexico but has resided in the United States for at least 20 years. Dkt. No. 1, p. 2. She entered the United States "without inspection" at the age of fourteen, *Id*; Dkt. No. 19-3, p. 2. Ms. Valenzuela has three United States citizen children, all under 18 years

[1] The facts recited here are those alleged in Ms. Valenzuela's petition. As discussed during oral argument, an evidentiary hearing may be necessary to resolve certain factual disputes in this case.

of age. Dkt. No. 1, p. 3. Her wife has a pending asylum application, a work permit, and a social security number, and intended to add Ms. Valenzuela as a beneficiary of her asylum claim, though she has not been able to do so because of resource constraints.[2] *Id.*

Ms. Valenzuela was arrested on August 6, 2026, and was detained at the Salt Lake County Jail. *Id.* at 4. After seven weeks of detention, Ms. Valenzuela's attorney presented her with a plea offer. *Id.* Ms. Valenzuela pled guilty to misdemeanor assault and was sentenced to 45 days with credit for time served, which meant that she was ordered to be released. *Id.* But the next morning, instead of being released, Ms. Valenzuela was picked up by ICE agents and taken to an ICE office in Orem, Utah. *Id.* The agents asked "a lot of questions about her personal situation" and ultimately told her that she could "either sign for voluntary departure or wait 5–6 weeks for a judge to hear her case[;]" the first option would result in her release in Mexico within a week, while the second would require her to "stay in custody for months and possibly more than a year before her case would be resolved." *Id.* The agents also informed Ms. Valenzuela that "they would be moving her to a detention facility in another state[;]" they "did not tell they had authority to release her, and they also did not tell her she had a right to a prompt bond hearing with an immigration judge." *Id.* Ms. Valenzuela was given only a "few minutes" to consider these options. *Id.* She reports "feeling intense pressure to sign for voluntary departure" and agreeing to do so. *Id.* at 5. She also reports that, despite understanding English, she is not literate and did not know the content of the paper she signed. *Id.* After signing, she was taken to Tooele County Jail. *Id.*

---

[2] Respondents report that Ms. Valenzuela indicated that she was single when questioned by ICE; that she called a friend, rather than her wife, while in custody; and that her wife appears to be the complaining witness in the state criminal proceedings discussed below. Dkt. No. 19, pp. 5–6. Ms. Valenzuela has since explained that the "friend" she called while in custody is her wife. Dkt. No. 25, p. 3.

Ms. Valenzuela filed her petition for a writ of habeas corpus in this court on September 24, 2026, accompanied by an emergency motion to stay her transfer out of Utah. *See* Dkt. Nos. 1, 3. Her petition for a writ of habeas corpus alleges that she "faced undue pressure to sign the form for voluntary departure" and challenges both the legality of her present detention without bond and the validity of the deportation order she signed. *Id.* at 5, 9. The court granted in part Ms. Valenzuela's motion to stay transfer, ordering that she not be transferred outside a 100-mile radius of the Orrin G. Hatch United States Courthouse. Dkt. No. 5. After this court delayed briefing on this petition so that Ms. Valenzuela's counsel could visit her in order to discuss this case, Ms. Valenzuela was "unexpected[ly] transfer[red] over the weekend," complicating her counsel's efforts to reach her. Dkt. No. 25, p. 1.

This court held a hearing on Ms. Valenzuela's petition on October 7, 2026, at which Ms. Valenzuela was present. Just before that hearing, Respondents filed a status report indicating that a bond hearing had been scheduled for Ms. Valenzuela on October 13, 2026, in the West Valley Immigration court in Utah. Dkt. No. 27. They purported to attach as an exhibit the notice for this hearing. Dkt. No. 27-1. As the court noted during oral argument, the notice exhibited by Respondents did not mention bond and did not appear to be a notice for a bond hearing, as it warned Ms. Valenzuela that she could be ordered removed from the United States if she failed to appear, which was inconsistent with a bond hearing being held while Ms. Valenzuela was already in detention. Dkt. No. 27-1, p. 1. After the hearing, Respondents filed an additional status report representing that the "immigration court ha[d] since issued a corrected copy of the hearing notice" and exhibiting that "corrected" notice. Dkt Nos. 28, 28-1. Respondents did not explain how the

erroneous notice was issued, nor did they indicate whether the corrected notice was issued by the immigration court on its own initiative or as a result of this court's inquiries.[3]

Just before the hearing, Respondents also moved to admit additional documents: a notice to appear against Ms. Valenzuela, in which she was informed of a removal hearing scheduled for October 21 and requested a bond hearing; and a declaration by Officer Shields, describing his interview with Ms. Valenzuela. Dkt. Nos. 26, 26-1, 26-2.

Following the hearing, Respondents filed two additional briefs, in which they argued that the court should not grant Ms. Valenzuela's requests that the court shift the burden of proof in her bond hearing and order Respondents to produce documents related to her detention. Dkt. Nos. 29, 30. In their brief addressing the issue of the burden of proof, Respondents acknowledged that they incorrectly represented to the court that the Form I-213 for Ms. Valenzuela had already been filed in the bond proceedings. Dkt. No. 29. Respondents indicated that counsel's inaccurate representation to the court during the hearing "was based on a miscommunication with ICE counsel" and that the Form I-213 and FBI rap sheet have not been filed in the bond proceedings, though Respondents represented that the government "ha[d] every intent to file" them. Dkt. No. 29, p. 4. Respondents indicated that they would not object to an order requiring those documents to be filed, or to an order requiring that Ms. Valenzuela have "reasonable access to phone calls and visits" while she is detained. *Id.* at 5. Respondents did not indicate whether Ms. Valenzuela could expect "reasonable access to phone calls and visits" without a court order.

---

[3] During oral argument, the parties referred to Ms. Valenzuela's bond hearing as taking place on the Wednesday following this court's hearing. Respondents' submission of the corrected notice of the bond hearing indicated that the "date and time of the custody redetermination hearing remain unchanged[.]" Dkt. No. 28, p. 1. However, the bond hearing was scheduled for October 13, 2026, the following Tuesday.

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that her custody is in violation of the law. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.").

## DISCUSSION

### I. Deportation Order & Right to a Bond Hearing

Respondents, while disputing Ms. Valenzuela's factual account and arguing that her signature on the voluntary departure form was not coerced, indicate that they "will vacate the request for voluntary departure." Dkt. No. 19, p. 3; *see also* Dkt. No. 26-2. They further indicate that a bond hearing has been scheduled for October 13, 2026, in the West Valley Immigration Court in Utah. Dkt. Nos. 27, 27-1, 28, 28-1.

Ms. Valenzuela maintains her factual account of her interview with Officer Shields, including the allegations that she was not told of her right to a bond hearing; that she was not given adequate time to consider her decision; and that she didn't know what she was signing. Dkt. No. 25, pp. 2–4. Ms. Valenzuela acknowledges that she signed more than one paper but argues that

the papers exhibited by Respondents, which she allegedly signed, offer little support for Respondents' factual account, noting that the forms' existence does not prove that she was given adequate information about their content. *Id.* at 3, 7. Because Respondents agree that Ms. Valenzuela's signed departure form will be voided and that she is eligible for a bond hearing under 8 U.S.C. § 1226(a), the court need not determine the voluntariness of Ms. Valenzuela's signature on the deportation order at this time.

## II. Document Production

The parties continue to dispute Ms. Valenzuela's request that the court order Respondents to produce documents relevant to her detention. Respondents insist that Ms. Valenzuela was given copies of certain documents and can simply "ask the staff at the jail" for her copies; that it is the policy of "local attorneys representing" ICE to "be reasonable in releasing non-confidential documents[;]" and that there is "no legal authority authorizing the Court to demand Respondents produce any additional documents." Dkt. No. 30, pp. 1–3.

Ms. Valenzuela identifies extensive legal authority authorizing such a production order, including Supreme Court precedent and federal statutes. First, Ms. Valenzuela highlights *Harris v. Nelson*, in which the Supreme Court emphasized that "[t]here is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus" and concluded that

> in appropriate circumstances, a district court, confronted by a petition for habeas corpus which establishes a prima facie case for relief, may use or authorize the use of suitable discovery procedures, including interrogatories, reasonably fashioned to elicit facts necessary to help the court to 'dispose of the matter as law and justice require.' 28 U.S.C. § 2243.

*Harris v. Nelson*, 394 U.S. 286, 292 & 290 (1969). The Tenth Circuit has reaffirmed that holding. *United States v. Velarde*, 485 F.3d 553, 560 (10th Cir. 2007) ("Discovery is authorized in habeas corpus cases[.]").

Ms. Valenzuela also draws the court's attention to the Rules Governing § 2254 Cases, which provide that a district court may apply them to a habeas petition. RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS, R. 1(b). Those Rules provide that a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." *Id*. at R. 6.

Finally, Ms. Valenzuela identifies several recent cases in which district courts have ordered the production of documents in habeas proceedings. *See* Dkt. No. 33, p. 3. In those cases, district courts have repeatedly concluded that discovery can be authorized in the habeas context. *Romero Marentes v. Warden of the Golden State Annex ICE Detention Facility*, No. 1:26-cv-00247, 2026 WL 1130395, at *2 (E.D. Cal. Apr. 27, 2026) (granting petitioner's request for the production of documents); *Aguilar Olarte v. ICE*, 2:25-cv-01662, p. 2 (D. Ariz. Aug. 14, 2025) (grating petitioner's motion for limited discovery); *E.D.Q.C. v. Dickerson*, No. 4:25-cv-00050 (M.D. Ga. June 3, 2025) (granting petitioner's motion for expedited jurisdictional discovery); *Jeremie B. v. Chestnut*, No. 1:26-cv-2779, 2026 WL 1022947, at *1 (E.D. Cal. Apr. 15 2026) (ordering respondents to file "Petitioner's full Form I-213, any orders of release or detention, any custody warrants or notices, and any other portions of Petitioner's A-File relevant to the determination of the issues presented in the Petition" alongside their response to the habeas petition).

Respondents, having informed the court that there is "no legal authority authorizing the Court to demand Respondents produce any additional documents," have not explained whether they could not find these authorities or merely considered them distinguishable. Dkt. No. 30, p. 3.

Regardless, multiple authorities, including Supreme Court precedent, clearly authorize this court to order the production of documents in habeas proceedings where petitioner shows good cause for such an order. Ms. Valenzuela has made that showing here; as her counsel explained during oral argument, the requested documents are not realistically accessible to Ms. Valenzuela and go directly to the basis for her detention. The court therefore grants Ms. Valenzuela's requests for the production of documents.

## III. Burden of Proof at Ms. Valenzuela's Bond Hearing

The parties continue to dispute who should bear the burden of proof at Ms. Valenzuela's bond hearing—either Ms. Valenzuela must prove that she is not a flight risk or danger to the community, or Respondents must prove that she is. Respondents' briefing discusses the Ninth Circuit's ruling in *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), in which it concluded that the Due Process Clause did not require the government to bear the burden of proof at the petitioner's bond hearing. *See* Dkt. No. 29, pp. 1–2. Respondents also seek to distinguish this case from that of *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), in which the First Circuit found that the government should bear the burden of proof.

Though the facts in this case are not identical to those in *Hernandez-Lara*, Ms. Valenzuela persuasively argues that relevant details are consistent between the two cases. Ms. Valenzuela notes that Respondents suggest that she will have the assistance of counsel in her bond hearing, but she has not yet obtained counsel to represent her in her bond hearing and will not be entitled to appointed counsel. Dkt. No. 32, p. 4. Furthermore, Ms. Valenzuela highlights the overwhelming practical obstacles she will encounter in trying to assemble passports, birth certificates, pay stubs, and other relevant documentary evidence while she is in Respondents' custody. *Id*. at 4–5. Ms. Valenzuela also notes that, while she does not currently have a pending asylum application, she

does have a path to citizenship through her children and spouse. *Id*. at 3–4. Thus, Ms. Valenzuela's case is similar to the facts in *Hernandez-Lara*, even if it is not identical.

The Supreme Court has reserved ruling on which party bears the burden of proof at § 1226(a) bond hearings, and the Tenth Circuit has not yet had occasion to opine on the issue. *See Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018) (declining to reach burden-of-proof arguments because they were not considered by the lower court); *see also Black v. Almodovar*, 156 F.4th 171, 173–74 (2d Cir. 2025) (Nardini, J., dissenting) (detailing the "circuit splat" of "all-over-the-map holdings" regarding the burden of proof in § 1226(a) bond hearings). Circuits are not only split on which party bears the burden; they are also split on the extent of the burden. *Compare Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) (placing the burden on the government to justify continued detention by "a preponderance of the evidence" for flight risk but "clear and convincing evidence" for dangerousness), *with Velasco Lopez v. Decker*, 978 F.3d 842, 855–56 (2d Cir. 2020) (requiring the government to provide "clear and convincing evidence" for both flight risk and dangerousness).

Other district courts in this circuit applied the tripartite *Mathews v. Eldridge* framework to this determination and have held almost unanimously that the government must bear the burden of proof at § 1226(a) bond hearings. 424 U.S. 319, 335 (1976). *See, e.g.*, *Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1159 (D. Colo. 2026) (concluding that "it is the Government's burden to 'justify a noncitizen's continued detention at a bond hearing'" (citations omitted)); *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1245 (D.N.M. 2025) (applying the *Mathews* and civil detention frameworks to conclude that the burden of proof must be shifted "to the Government to prove, by clear and convincing evidence, that Petitioner is at risk of flight and/or a danger to the community such that continued detention is necessary"); *Arias v. Levya*, 2:26-cv-00812-RJS, 2026 WL

2957987, at *7–8 (D. Utah Oct. 1, 2026) (applying the *Mathews* framework and concluding that the balance of factors weighed in favor of shifting the burden to the government).

As to the extent of the burden the government must bear, "clear and convincing evidence" is the most appropriate standard. "[T]he Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake." *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926 (D. Colo. 2025) (citing *United States v. Salerno*, 481 U.S. 739, 751 (1987)). The First Circuit held in *Hernandez-Lara v. Lyons* that a preponderance of the evidence standard was appropriate for flight risk in part because "there is less risk of error from a preponderance standard on this issue because, as noted, detained citizens possess knowledge of many of the most relevant factors." 10 F.4th at 40. This court, however, is conscious that the rapidly changing landscape of immigration detention has made it increasingly difficult for detained noncitizens to effectively access counsel and make arguments at bond hearings. *See, e.g.*, *Andrade v. Mullin*, 2:26-cv-00805-JNP, 2026 WL 2641853, at *2 (D. Utah Sept. 8, 2026) ("During [oral argument], Ms. Andrade's counsel represented that he had been unable to locate or communicate with Ms. Andrade since her transfer to ICE custody."); *Chiriboga v. Mullin*, No. 2:26-cv-00760-JNP, 2026 WL 2797328, at *1–2 (D. Utah Sept. 18, 2026) (detailing the government's inability to locate the individual detained by ICE). In the absence of further direction from the Tenth Circuit, clear and convincing evidence is the appropriate standard for both risk of flight and danger to community. The court therefore concludes that Respondents should bear the burden of proving by clear and convincing evidence that Ms. Valenzuela is a flight risk or poses a danger to the community.

## CONCLUSION AND ORDER

For the foregoing reasons, the court ORDERS as follows:

1. Ms. Valenzuela's petition for a writ of habeas corpus is GRANTED. Dkt. No. 1.
2. Respondent's motion for leave to file additional exhibits is GRANTED. Dkt. No. 26.
3. Respondents are ORDERED to vacate the request for Ms. Valenzuela's voluntary departure.
4. Respondents are ENJOINED from detaining Ms. Valenzuela, denying her bond or conditional parole, or seeking her deportation on the basis of the voluntary departure form. That form is declared to be void.
5. Respondents are ORDERED to produce the following categories of documents, or sworn declarations that such documents do not exist, by October 16, 2026:
    a. Any records requested in Ms. Valenzuela's petition (Dkt. No. 1) that have not already been provided;
    b. Any "agency records" that Officer Shields relied on to make his custody determination (Dkt. No. 26-2, p. 1);
    c. Any internal policies, whether communicated in writing or verbally, that Officers Shields considered while making his custody determination;
    d. Any notes taken by Officer Shields or others in connection with the processing of Ms. Valenzuela;
    e. Any forms or paperwork that Ms. Valenzuela filled out during processing.
6. Because of the confusion regarding the date of Ms. Valenzuela's bond hearing, this order issues after the scheduled hearing. The parties are therefore ORDERED to file by October 16, 2026, status reports indicating:
    a. Whether Respondents provided Ms. Valenzuela with a bond hearing on October 13, 2026, in the West Valley Immigration Court in Utah;

b. Whether Respondents bore the burden of establishing by clear and convincing evidence that Ms. Valenzuela is a flight risk or danger to the community under 8 U.S.C. § 1226(a) at that hearing;

c. Whether, prior to that hearing, Respondents produced the documents requested by Ms. Valenzuela and ordered to be produced by this court in this order and, if so, when those documents were produced;

d. Whether Ms. Valenzuela was represented by counsel at that hearing;

e. The outcome of that hearing; and

f. Ms. Valenzuela's detention status following that hearing.

7. If Ms. Valenzuela is released on bond or conditional parole, Respondents are ORDERED, at the time of release, to provide her any personal effects and identification documents that were confiscated from her.

DATED October 13, 2026.

BY THE COURT

Jill N. Parrish
Chief United States District Court Judge
District of Utah